## CUTTING *v*. PIKE.

The defendant entered into land of A. under a verbal agreement for a purchase. He afterwards paid for the land, and, to prevent it from being attached for his debts, instead of a deed, took from A. his written contract to convey on demand, and remained in possession: *Held*,

1. That in equity the defendant was the owner of the land.

2. That his possession was in law notice of his equitable interest.

3. That a creditor of A., the former owner, could not hold the land against the defendant, under the extent of an execution issued on a judgment against A.,

and levied after the defendant had paid for the land, and taken the written agreement to convey.

4. That the intention to defeat the creditors of the defendant could not be taken advantage of by a creditor of A.

WRIT OF ENTRY for the recovery of one acre of land in Haverhill. Plea, the general issue.

The plaintiff's evidence tended to prove, that in 1838 the premises, with four and a half acres adjoining, were owned by L. M. Kellogg, who in that year agreed to sell these tracts, five and a half acres, to Abijah Cutting.

Soon after, said Cutting agreed with Drury Pike, the defendant, to sell him, for the price of thirty dollars, one acre of the north end of his purchase, which was the acre demanded.

It was agreed that Pike should go into possession, and should draw upon the land a house which he had bought, and it was also agreed that this house should be the property of A. Cutting, in case Pike did not pay for the land. Pike said he was afraid, if he took a deed, it would be attached for his debts. He moved the house upon the land, and lived there with his family, and cultivated the land till April, 1847.

On the 14th of December, 1839, Clark & Co. attached Pike's right to this house, and on the 16th of January, 1840, caused the same to be sold on their execution, as personal property, to Isaac Pike, whose title the plaintiff has. A. Cutting was present at the sheriff's sale of the house, claimed it as his, stated the bargain between Pike and himself, and forbade the sale.

In May, 1841, A. Cutting finished paying for his land, and took his deed from Kellogg, and Pike paid part of the money due for his acre; and an arrangement was then made between Pike, Cutting, and Kellogg, by desire of Pike, that Kellogg should make a deed to Cutting of the other four and a half acres, and should make a deed directly to Pike of this acre, Pike then stating, as the reason for this wish, that he considered Kellogg good, and felt safe to trust him, and was afraid if he took a deed, the land would be attached for his debts. Kellogg understood his object, and agreed to give the deeds accordingly,

Cutting *v.* Pike.

and the balance of the price of thirty dollars, which Pike had not paid to Cutting, he paid to Kellogg.

On the 21st of June, 1841, Rix & Cummings attached this acre, in a suit against Kellogg for his debt, and on the 12th of October, levied their execution upon it. In this levy the land is described as " a tract containing one acre, being the same on which D. Pike's house stands, being the same acre that is excepted in the deed from Kellogg to Cutting, reference being made to said deed, meaning not to include the building on the same."

Objection was made to this levy, because there is no sufficient description of the land by metes and bounds, and because the appraisers could not lawfully make such exception of the house, and because Kellogg had no interest in the property as against Pike.

The description in the deed of Kellogg to Cutting, referred to in the levy of Rix & Cummings, contains an exception in these words : " excepting one acre in the north end of said lot, which is now occupied by Drury Pike."

Rix & Cummings conveyed this land to Isaac Pike, and Isaac Pike to the plaintiff.

The plaintiff objected that the contract between Pike and Cutting, and the agreement between Pike, Cutting, and Kellogg, could not be shown by parol, but the objection was overruled.

The defendant offered in evidence a written contract of Kellogg, as follows :

" Haverhill, June 5, 1841. For value received, I promise to give Drury Pike a good warranty deed of one acre of land, and all the appurtenances thereto belonging, on demand by his order, it being the same that the said Pike now lives on." [Signed,] " Leonard M. Kellogg."

This paper was objected to as incompetent, and invalid for any purpose, there being no consideration shown, but the objection was overruled.

There was evidence tending to show, that Drury Pike was much in debt during this period.

The jury, by direction of the Court, found a verdict for the

29 *

plaintiff, subject to the opinion of the Court, which verdict the
defendant moves to set aside.

*H. A. Bellows*, for the defendant.

I. The levy is void.

1. Because it does not describe the land by metes and bounds;
and the reference to the deed of Kellogg, does not aid the de-
fect of the levy, the description in the deed being of the same
indefinite character. *Tate* v. *Anderson*, 9 Mass. 92.

2. Because the levy excepts the house, which is part of the
realty and inseparable from the land. *Clough* v. *Hosford*,
6 N. H. Rep. 231.

II. Kellogg had no interest in the land that could be taken
for his debt. Pike, at the time of the levy, had an equitable
title to the land, and Kellogg could not set up his legal estate
against Pike, nor could a purchaser or creditor of Kellogg with
notice. *Scoby* v. *Blanchard*, 3 N. H. Rep. 170 ; *Hadduck* v.
*Wilmarth*, 5 Ib. 181.

Pike was in possession, and this was notice of his equitable
interest. Nor is the question affected by the fact that Pike for-
bore to take a deed, because he apprehended the land might be
taken for his debt. *Pendexter* v. *Carlisle*, Coos County, not
yet reported ; *Wearse* v. *Prince*, 24 Pick. 141.

*Quincy*, for the plaintiff.

PERLEY, J. The case shows that the defendant made a bar-
gain with Cutting for the purchase of the land at the price of
thirty dollars, and entered under that bargain ; that he paid part
of the purchase-money to Cutting, in May, 1841, and on an
arrangement made by him with Cutting and Kellogg, paid the
residue of the price to Kellogg, on his verbal undertaking to
convey the land directly to the defendant. Though not dis-
tinctly found by the case, it may be fairly inferred from the
other fact, that Cutting paid to Kellogg the money he had
received of Pike, as the agreement of Kellogg to convey was
arranged by and among the three, on Pike's paying the balance

to Kellogg. At any rate, Pike paid the full price of the land to the party, or the parties entitled to receive it, and had the verbal promise of the owner, Kellogg, to convey.

Kellogg's contract to convey, made on the 5th of June, is no more than his previous verbal agreement reduced into writing, and was made on the consideration that Pike had fully paid for the land, according to his agreement with Cutting, and to the satisfaction of Kellogg. And the objection to the written agreement, that it was without consideration, is not sustained by the facts of the case. At the time, therefore, when Rix & Cummings made their levy, the title to the land stood thus: The defendant had entered into the land under a verbal contract to purchase, had moved on a house, and resided there and cultivated the land for two or three years, had fully paid the agreed price, and taken the written agreement of Kellogg to convey on demand. This made the defendant the equitable owner of the land. A court of equity would have decreed specific performance of Kellogg's written agreement to convey. But he did not need the aid of a decree in equity to protect himself against any claim that Kellogg might set up at law. He had fully paid for the land, and was in possession under Kellogg's written agreement to convey on demand, and this equitable interest might be set up as a complete defence against Kellogg in a suit at law to recover the land. *Hadduck* v. *Wilmarth; Scoby* v. *Blanchard,* cited for the defendant.

And he might set up the same defence against a purchaser or creditor, who had notice of his equitable estate. *Hadduck* v. *Wilmarth, supra.* Nor can the objection prevail, that Pike omitted to take a deed for the purpose of defeating his creditors. This was no injury to the creditors of Kellogg. They had no right to take the land of Pike for the payment of Kellogg's debts. The defendant is not asking the aid of the Court to enforce performance of an agreement. The agreement, so far as is necessary for his defence against the claim of the demandants, is executed. He has paid for the land according to the agreement, and is in possession under it, and may stand on this possession against Kellogg, or any other party, who claims in Kellogg's place with notice of his equitable interest. On the

ground, therefore, that Kellogg had nothing in the land that Rix & Cummings could take for their debt, the title of the plaintiff fails, and the verdict must be set aside.

Such being the opinion of the Court on this part of the case, we are not called on to decide the other points raised in argument. If, however, Pike's possession of the land taken on the execution, were shown by evidence *aliunde* to have been marked by clear and distinct limits, there are authorities which lean strongly to the conclusion, that the description in the levy by reference to that possession would be sufficient. *McConihe* v. *Sawyer*, 12 N. H. Rep. 397; *Gilman* v. *Thompson*, 11 Verm. Rep. 643; *Rollins* v. *Mooers*, 25 Maine Rep. 193; *Bates* v. *Willard*, 10 Met. Rep. 62.

The other objection to the levy, that the house on the land was excepted, and the land attempted to be taken without the house, would seem· to be well founded, unless the house were severed in some way from the land, and made the personal pro-, perty of some person beside the debtor. If the house were annexed to the land and parcel of the real estate, the levy could not divide it from the land, and give the creditor the land without the house. By the bargain between Cutting and Pike, the house would belong to Cutting, and could not be divided from the land. But that bargain might not be binding on a creditor of Pike. If the house was lawfully sold on execution against Pike for his debt, the purchaser would hold it as personal property, and the land might then bé taken for Kellogg's debt, if it belonged to him, without the house. The burden of proof would lie on the party that claimed the land under a levy which excepted the house, to show that the house was personal property and did not belong to the debtor. If this were shown, the exception of the house in the levy, might well be considered as part of the description of the premises taken and appraised; and no sufficient reason is apparent for holding the levy void, though it should not state on its face that the house did not belong to the execution debtor, and was excepted on that account. *Gault* v. *Hall*, 26 Maine Rep. 561. The verdict must be set aside and

*A new trial granted.*